UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| WILLIE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-CV-033-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| LIEUTENANT DAVIS, ET AL., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Plaintiff Willie Davis is a federal inmate presently confined at the United States Penitentiary-Lewisburg in Lewisburg, Pennsylvania, but formerly was confined at the United States Penitentiary-McCreary in Pine Knot, Kentucky. Davis filed this civil rights action against three staff members at USP-McCreary, in their individual capacities: Lieutenant Joseph Davis, Senior Officer Specialist John Best, and Correctional Officer Benjamin Cooper. [R. 18: Amended Complaint.] Davis brings this action pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and claims that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his First Amendment right to be free from retaliation. [*Id*. at 3.]

More particularly, Davis claims that on August 5, 2011, while being housed in the Special Housing Unit ("SHU") at USP-McCreary, the Defendants used excessive force in subduing him. [*Id.*] He claims that Defendants physically assaulted him, kicked him in the head until he lost consciousness, and continued to use physical violence to "wake [him] back up." *Id*.

at 3. Davis claims that during the assault he was in handcuffs and that he was not resisting. [*Id*.] Plaintiff Davis also claims that the Defendants' actions were done in retaliation against him for using the Bureau of Prisons' (BOP) Administrative Remedy Program. [*Id*.] His Amended Complaint seeks $1.5 million in "punitive and compensatory damages from each defendant in his individual capacity."

This matter is before the Court on Defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b), or in the alternative, for summary judgment. [R. 32] This motion is ripe for review. Because the record establishes that Davis's complaint should be dismissed for his failure to exhaust his administrative remedies relative to his *Bivens* claims, Defendants' motion to dismiss, or in the alternative, for summary judgment will be granted.

**I**

On August 5, 2011, Defendants Davis, Best and Cooper were all assigned to the SHU at USP-McCreary. [R.32-8; Declaration of Lieutenant Joseph Davis, ¶ 3; R, 32-9, Declaration of Senior Officer Specialist John Best, ¶ 3; R. 32-10, Declaration of Correctional Officer Benjamin Cooper, ¶ 3.] Davis was assigned as the SHU Lieutenant, Defendant Best was assigned as the SHU #5 Officer, and Defendant Cooper was assigned as SHU #3 Officer. [*Id*.] At approximately 8:30 a.m., Plaintiff broke the head of the fire suppression overhead sprinkler in his cell, causing the sprinkler head to spray water, and Plaintiff's cell floor became flooded. [*Id*.] Plaintiff began to push the water from his cell, which contained a mixture of urine and feces, under his cell door out onto the range floor. [*Id*.] To restore order to the range, and to clean the unsanitary and unsafe condition Plaintiff had created, Defendants Davis, Best and Cooper had to move Plaintiff to another cell. [*Id*.]

At approximately 9:14 a.m., as Defendants Davis, Best and Cooper were removing Plaintiff from his cell, he became verbally abusive and kicked the water contaminated with urine and feces onto the Defendants.[1] [R. 32-8, Declaration of Lieutenant Joseph Davis, ¶ 4; R. 32-9, Declaration of Senior Officer Specialist John Best, ¶ 4; R. 32-10, Declaration of Correctional Officer Benjamin Cooper, ¶ 4.] Plaintiff was given verbal orders to stop kicking the water, and he did, but he continued to make threats against staff. [*Id*.] Plaintiff then made a threat to Officer Coffman, who was standing at the end of the range. [*Id*.] Plaintiff attempted to break away from the Defendants, lunged at Officer Coffman and spit in Coffman's face. [R. 32-8, Declaration of Lieutenant Joseph Davis, ¶ 5; R. 32-9, Declaration of Senior Officer Specialist John Best, ¶ 5; R. 32-10, Declaration of Correctional Officer Benjamin Cooper, ¶ 5.] At that time the Defendants took Plaintiff to the ground, *i.e.*, the floor, in order to regain control of the situation. [*Id.*]

While on the floor, Plaintiff continued to struggle and remained verbally abusive toward the Defendants. [R. 32-8, Declaration of Lieutenant Joseph Davis, ¶ 6; R. 32-9, Declaration of Senior Officer Specialist John Best, ¶ 6; R. 32-10, Declaration of Correctional Officer Benjamin Cooper, ¶ 6.] Plaintiff attempted to bite and spit on Defendant Best. [*Id*.] Defendant Davis summoned additional staff members and requested that staff bring leg restraints. [R. 32-8, Declaration of Lieutenant Joseph Davis, ¶ 5; R. 32-10, Declaration of Correctional Officer Benjamin Cooper, ¶ 5.] After the leg restraints were in place, Plaintiff was placed on his feet and escorted to an observation cell. [R. 32-8, Declaration of Lieutenant Joseph Davis, ¶7; R. 32-9,

---

[1] Defendants advise that surveillance video footage of the SHU range at the date and time of this incident has been preserved and is available for the Court's *in camera* review.

Declaration of Senior Officer Specialist John Best, ¶ 7; R. 32-10, Declaration of Correctional Officer Benjamin Cooper, ¶ 7.]

At approximately 11:20 a.m., Plaintiff was medically assessed. [R. 32-11, Declaration of Ronald Corriveau, ¶ 6; Attachment A: BOP Electronic Medical Record, August 5, 2011.] Plaintiff reported pain in the right side of his face, his left side and right ankle. [*Id*.] However, the medical assessor noted no visible signs or symptoms of acute distress and reported "No Injury Identified[.]" [*Id*.]

On January 24, 2012, the BOP's Office of Internal Affairs referred Plaintiff's allegations of excessive force to Ronald J. Corriveau, the Special Investigative Agent ("SIA") at USP-McCreary, for an investigation. [R. 32-11, Declaration of Ronald Corriveau, ¶ 4.] The investigation was initiated as a result of allegations Plaintiff made in the administrative remedy process. [*Id*.] During the course of the investigation, Plaintiff was interviewed and executed an affidavit on March 9, 2012. [*Id*.] In the affidavit, Plaintiff stated that the Defendants subdued him and proceeded to kick him in the head until he lost consciousness. [*Id*.] He also testified that the Defendants continued to beat him until he regained consciousness. [*Id.*]

Additionally, the Defendants and other staff members were interviewed and submitted sworn affidavits. [*Id*. at ¶ 5]. The Defendants denied Davis' allegations that he was kicked or physically assaulted. [*Id*.] Rather, the Defendants indicated that they used appropriate force in response to his assaultive behavior. [*Id*.] SIA Corriveau also interviewed and obtained affidavits from other staff members who supported the Defendants' accounts of the incident. [*Id*.]

SIA Corriveau also reviewed the medical assessment completed at 11:20 a.m. on the morning of the incident. [R. 32-11, Declaration of Ronald Corriveau, ¶ 6; Attachment A.] According to the medical assessment, Plaintiff reported that the right side of his face, the left side

4

of his body and his right ankle hurt. [*Id*.] However, the medical professional conducting the assessment noted that there were no visible signs of or symptoms of acute distress and there was "No Injury Identified[.]" [*Id*.]

At the conclusion of the investigation, SIA Corriveau determined that the testimony provided by the staff members was supported by the video and medical evidence. [R. 32-11, Declaration of Ronald Corriveau, ¶ 7.] He concluded that the staff members involved in the incident had acted in a professional manner during the use of force. [*Id*.] Accordingly, SIA Corriveau found that the Defendants did not engage in excessive use of force during the incident. [*Id*.]

## II

Plaintiff has filed numerous administrative remedies at various federal institutions. [R. 32-2, Declaration of Joshua Billings, ¶ 4; Attachment B: BOP SENTRY Report, Administrative Remedy Generalized Retrieval.] However, Plaintiff failed to properly exhaust his administrative remedies in relation to both his First and Eighth Amendment claims that he raises in the instant Complaint.

On August 17, 2011, Plaintiff filed a Request for Administrative Remedy No. 652759-F1 ("BP-9") with the Warden at USP-McCreary.[2] [R. 32-2, Declaration of Joshua Billings, ¶ 5; Attachment B: BOP SENTRY Report, at 9.] Plaintiff claimed that on August 5, 2011, while staff members were escorting him in the SHU, they "slammed" him to the ground, kicked him in the head until he was unconscious, and continued to assault him until he regained consciousness. [R. 32-2, Declaration of Joshua Billings, ¶ 5; Attachment C: Administrative Remedy Packet for

---

[2]Plaintiff styled his administrative filing as a "Sensitive" BP-9, discussed at length hereinafter.

5

Remedy ID# 652759.] Plaintiff claimed that during the alleged assault he was in handcuffs and that he did not resist. [*Id.*] Additionally, Plaintiff maintained that it was "obvious" that the alleged "assault" was a conspiracy among SHU employees in retaliation for Plaintiff's assault on a correctional officer. [*Id.*] On August 22, 2011, the Warden at USP-McCreary responded to Plaintiff's BP-9, noting that Plaintiff did not request any relief. [*Id.*] The Warden's response further noted, however, that allegations of staff misconduct were taken seriously and would be reviewed, and that BOP employees are subject to conduct regulations which prescribe appropriate actions if deemed warranted. [*Id.*] The Warden further explained that inmates are not entitled to know the outcome, if any, of such reviews. [*Id.*] The Warden also advised Plaintiff that if he were not satisfied with the response provided, he could appeal to the Regional Director. [*Id.*]

On August 29, 2011, Plaintiff filed an appeal (Remedy No. 652759-R2) with the Mid-Atlantic Regional Director ("BP-10"). [R. 32-2, Declaration of Joshua Billings, ¶ 6; Attachment B at 10; Attachment C.] The appeal was rejected and not accepted for filing because Plaintiff had failed to attach the Warden's response to his BP-9, and he did not include the required number of copies of the continuation page, both requirements of the BOP's Administrative Remedy Program.[3] [*Id.*] Plaintiff was advised he could re-file the Appeal, with the appropriate documents attached. [*Id.*]

---

[3]See 28 C.F.R. § 542.15, *Appeals*. Specifically, section 542.15(b) requires that any appeal submitted to the Regional Director must be accompanied by the BP-9 and the Warden's response. Section 542.15(b)(3) states that an appeal may contain one continuation page. If a continuation page is used, the inmate must submit two copies of the continuation page with an appeal filed at the regional level and three copies of the continuation page for an appeal filed with the General Counsel.

On October 4, 2011, Plaintiff resubmitted the BP-10 with the Regional Director. [R. 32-2, Declaration of Joshua Billings, ¶ 4; Attachment B at 11; Attachment C.] The appeal was accepted for consideration on that date. [*Id.*] On December 12, 2011, the Regional Director denied Plaintiff's appeal. [*Id.*] Specifically, the Regional Director noted that on the date in question, Plaintiff had broken the sprinkler head in his cell, and that when staff members were attempting to remove him from his cell, he kicked the water containing feces and urine onto the staff members. [*Id.*] Additionally, the Regional Director indicated that while Plaintiff was being escorted off the range, he assaulted another staff member by spitting in his face and lunging at him. [*Id.*] The Regional Director reported that Plaintiff was placed on the floor, and leg restraints were applied to regain control. [*Id.*] The Regional Director found that Plaintiff did not provide, nor did the investigation reveal, any evidence that staff had failed to follow proper policy and procedures during this incident. [*Id.*] Plaintiff was advised that he could file an appeal of the denial with the BOP's Office of General Counsel. [*Id.*]

On December 27, 2011, the Office of General Counsel received an appeal from Plaintiff ("BP-11"). [R. 32-2, Declaration of Joshua Billings, ¶ 8; Attachment B at 12; Attachment C.] The appeal was rejected because Plaintiff failed to attach a copy of the BP-9 and because he erroneously filed his appeal as "sensitive."[4] [*Id.*] Plaintiff was advised that he could correct the errors and resubmit the appeal within 15 days. [*Id.*] Despite being instructed as to the proper procedures, Plaintiff failed to resubmit his appeal. [*Id.*]

---

[4] 28 C.F.R. § 540.14(d)(1) provides that inmates can file a sensitive administrative remedy "if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." However, if the matter is determined not to be sensitive, the remedy can be rejected and the inmate is directed to file a remedy request with the warden at the institutional level.

7

**III**

**A**

As previously stated, Plaintiff filed an administrative remedy concerning the allegations contained in the Complaint; however, he failed to properly and fully exhaust his administrative remedies regarding these claims. Consequently, his Complaint must be dismissed.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to make exhaustion of administrative remedies mandatory for prisoners. The statute provides that:

> No action shall be brought with respect to prison conditions under 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Therefore, a prisoner-plaintiff must first exhaust "such administrative remedies as are available" prior to bringing a prison conditions action in a District Court. 42 U.S.C. § 1997e(a). Based on this provision, regardless of the relief offered through the administrative procedures, prisoners are required to exhaust all administrative remedies prior to filing a lawsuit regarding prison life. *Booth v. Churner*, 532 U.S. 731, 741 (2001). This requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Moreover, the Supreme Court has held that the PLRA requires proper exhaustion of the administrative remedy process, as "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules…" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court stressed that the benefits of exhaustion "can be realized only if the prison

grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.

The BOP's four-tiered administrative remedy scheme, available to inmates who have a complaint about their confinement, is set out in Administrative Remedy Program Statement 1330.17 and 28 C.F.R. § 542.10-542.19. In summary, an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a formal request or a Request for Administrative Remedy. 28 C.F.R. § 541.13(a). By attempting to informally resolve the issue, the inmate provides staff with an opportunity to correct the problem. If the inmate cannot informally resolve his issue, then he may initiate the formal remedy process by filing a formal written request, on the appropriate Request for Administrative Remedy form ("BP-9") to the Warden. 28 C.F.R. § 542.14. If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director for the geographical region in which the inmate's place of confinement is located. The appeal must be submitted on the appropriate Regional Administrative Remedy Appeal form ("BP-10"). 28 C.F.R. § 542.15. If the inmate is not satisfied with the Regional Director's response, he may appeal to the Office of General Counsel ("OGC") of the BOP, on the appropriate Central Office Administrative Remedy form ("BP-11"). Appeal to the General Counsel is the final administrative appeal in the BOP's Administrative Remedy Program. 28 C.F.R. § 542.15.

If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, a response shall be made by the Warden within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the time for response to a Request or Appeal is insufficient

to make an appropriate decision, the time for responding may be extended once by 20 days at the institution level, 30 days at the regional level, and 20 days at the Central Office level. The inmate must be informed of an extension in writing. 28 C.F.R. § 542.18.

One exception to the requirement that the initial filing be made at the institutional level is when the issue involved is sensitive in nature. Program Statement 1330.16(8)(d) and 28 C.F.R. § 542.14(d)(1) provide in pertinent part:

> (1) Sensitive issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

An examination of Plaintiff's complete administrative remedy history shows that he did not administratively exhaust remedy number 652759, which involved the excessive force and retaliation claims that are the subject of the present Complaint. [R. 32-2, <u>Declaration of Joshua Billings</u>, ¶¶ 4-11; Attachments B and C.] Plaintiff filed a Request for Administrative Remedy (BP-9) with the Warden at USP McCreary on August 17, 2011. [R. 32-2, <u>Declaration of Joshua Billings</u>, ¶ 5; Attachment B: SENTRY Report.] The Warden provided a response for informational purposes, indicating that the allegations of staff misconduct were being investigated, but that Plaintiff would not be provided with the results of the investigation. [*Id*.] Plaintiff filed an appeal (BP-10) with the Regional Director on August 29, 2011, but this remedy was rejected because Plaintiff had not attached the appropriate documentation to his appeal. [R.

32-2, Declaration of Joshua Billings, ¶ 6; Attachment B.]  Plaintiff re-filed the BP-10 on October 4, 2011.  [R. 32-2, Declaration of Joshua Billings, ¶ 7; Attachment B.]  The Regional Director denied Plaintiff's appeal on the grounds that Plaintiff's actions of assaulting a staff member had resulted in his being restrained and placed in leg restraints.  [*Id.*]  On December 27, 2011, Plaintiff filed an appeal (BP-11) with the BOP's Office of General Counsel.  [R. 32-2, Declaration of Joshua Billings, ¶ 8; Attachment B.]  The appeal was rejected because (1) Plaintiff had failed to attach the required documentation, *viz.*, a copy of the BP-9 and the Warden's response, and (2) Plaintiff labeled the appeal as sensitive when it did not contain any sensitive issues.  [*Id.*]  The Rejection Notice provided to Plaintiff advised him that he could correct the errors and resubmit the appeal within 15 days.  [*Id.*]  Plaintiff concedes in his Amended Complaint that the BP-11 he filed with the Office of General Counsel was rejected.  [R. 18: Amended Complaint at 5.]

Pursuant to the BOP's regulations and policy, Plaintiff could have cured his defective BP-11 and fully exhausted his administrative remedies by resubmitting the appeal.  Specifically, the rejection notice provided to Plaintiff advised him of the reasons for the rejection – failure to attach the BP-9 and for filing the appeal as sensitive, and a time frame for re-filing – within 15 days.  28 C.F.R. § 542.17(b).  However, Plaintiff failed to cure those fatal defects.

Plaintiff has no basis to claim that he could not properly exhaust his administrative remedies because he was in transit and did not have access to his property.  The facts refute any such claim.  Plaintiff's appeal filed with OCG was rejected on January 23, 2012, because he did not attach copies of the BP-9 he filed with the Warden or a copy of the response he received from the Warden.  [R. 32-2, Declaration of Joshua Billings, ¶ 10.]  Plaintiff was provided with notice that he had 15 days to re-file the appeal.  [*Id.*]  Plaintiff arrived at USP- Lewisburg on

November 11, 2011; on December 28, 2011, Plaintiff received his property, which contained approximately two inches of legal material and two inches of personal paperwork. [R. 32-2, Declaration of Joshua Billings, ¶ 10, Attachment D: Inmate Personal Property Record.] Therefore, Plaintiff cannot claim that he was unable to comply with Administrative Remedy Program filing requirements or deadlines due to his time in transit or due to a delay in receiving his property once he arrived at USP-Lewisburg. Plaintiff would have had possession of the documents he needed to resubmit the appeal to OGC when he received his property on December 28, 2011. Thus, Plaintiff had already received his personal property by the time the OCG rejected his appeal on January 23, 2012. Despite having his property and the ability to resubmit the appeal, Plaintiff abandoned the administrative remedy process and failed to resubmit the appeal. [R. 32-2, Declaration of Joshua Billings, ¶ 10; Attachment B: SENTRY Report.]

Thus, Plaintiff has failed to comply with the requirements of the PLRA and as confirmed in *Woodford v. Ngo*, *supra*. Merely attempting to exhaust, beginning the process of exhaustion, or filing deficient remedies will not suffice. A prisoner cannot fail to file an administrative grievance, or, as is Plaintiff's case, abandon his efforts to complete the administrative process altogether. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). Plaintiff's failure to properly exhaust his underlying *Bivens* grievances through all of the available administrative remedies denied the agency the opportunity to address the issue at hand at all administrative levels; denied the Court with a proper administrative record; and failed to set forth a proper finding of facts. *See Macias v. Zenk*, 495 F.3d at 44 (Notice of a claim alone is not sufficient after *Woodford v. Ngo*, which permits suit only after "proper exhaustion" of the administrative system).

For these reasons, the Court will grant Defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b), for Plaintiff's failure to exhaust his administrative remedies. "Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement." *Graves v. Davis*, 2:10-CV-210-MHT, 2012 WL 3639044, at *3 (M.D. Ala. July 26, 2012) *citing Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. at 93.

**B**

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held that a prisoner may not bring a civil rights suit under 42 U.S.C. § 1983 if doing so would necessarily imply the invalidity of the conviction or sentence *unless* the inmate has previously obtained a ruling that the conviction or sentence was invalid. The Supreme Court extended this rule to civil rights actions arising out of prison incidents resulting in a prisoner losing good conduct time. *Edwards v. Balisok*, 520 U.S. 641 (1997). In *Edwards*, the Supreme Court held that *Heck* prevents an inmate from pursuing a civil rights complaint which would (if successful) necessarily imply that the disciplinary conviction was invalid, until he firsts obtains a reversal of that conviction. *Id*. at 646. In the present case, Plaintiff failed to raise a timely challenge to the disciplinary convictions surrounding the events of August 5, 2011.

As a result of the incident about which Plaintiff complains that took place in the SHU at USP-McCreary on August 5, 2011, Plaintiff was issued four Disciplinary Reports: Report No. 2194816 (Destroying Property over $100), Report No. 2194813 (Assaulting without Serious Injury), Report No. 2194804 (Assaulting without Serious Injury), and Report No. 2191984 (Assaulting without Serious Injury). [R. 32-2, <u>Declaration of Joshua Billings</u>, ¶ 11; Attachment E, SENTRY Report, Inmate Discipline History.] Following disciplinary hearings, Plaintiff was

found to have committed the disciplinary infractions as charged. [*Id*.] He was sanctioned with a total loss of 122 days of good conduct time. [*Id*.] Plaintiff has not challenged these disciplinary convictions and sanctions through the BOP's Administrative Remedy Program. [R. 32-2, <u>Declaration of Joshua Billings</u>, ¶ 11; Attachment B; Attachment E.] Because Plaintiff's allegations that the Defendants used excessive force against him in retaliation for his use of the administrative remedy program would (if true) imply that the disciplinary convictions were invalid, *Edwards* prevents Plaintiff from pursuing the current claims until the disciplinary convictions are overturned or reversed. Further, because Plaintiff has failed to raise a timely challenge[5] to the disciplinary convictions as required by BOP policy, he cannot challenge the disciplinary convictions. Consequently, applying *Edwards*, Plaintiff is estopped from proceeding with the excessive use of force and retaliation claims against the Defendants.[6]

Having concluded that Plaintiff's Complaint must be dismissed because he failed to exhaust his administrative remedies and because his *Bivens* claims are premature, the Court need

---

[5]Program Statement 5270.09, Inmate Discipline, and 28 C.F.R. 541.8(I), provide that an inmate can appeal a disciplinary findings and sanctions through the BOP's Administrative Remedy Program. This program provides that inmates have 20 calendar days following the date they receive the DHO report to file an appeal of the DHO's findings through the Administrative Remedy Program. *See* 28 C.F.R. § 542.14(a) and Program Statement 1330.07, Administrative Remedy Program, at page 4. Plaintiff's administrative remedy history clearly indicates that he did not challenge the disciplinary reports that resulted from the incident that is the center of this litigation. [R. 32-2, <u>Declaration of Joshua Billings</u>, ¶ 11; Attachment B.]

[6]Defendants also contend that Plaintiff's Complaint must be dismissed for his failure to establish a constitutional claim, under either the First or Eighth Amendments. Defendants further submit that, even if Plaintiff had established a constitutional claim, they are entitled to the defense of qualified immunity. Having concluded that Plaintiff's Complaint is subject to dismissal because (1) he failed to exhaust his administrative remedies, and (2) his *Bivens* claims are premature, as his disciplinary convictions have not been invalidated, the Court need not address these arguments.

not expend limited judicial resources in analyzing Defendants' alternative motion for summary judgment.

**III**

Accordingly, **IT IS ORDERED** as follows:

(1) Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b), or alternatively Motion for Summary Judgment [R. 32] is **GRANTED**;

(2) Plaintiff Willie Davis's Complaint [R. 1] and Amended Complaint [R. 18] are **DISMISSED**;

(3) The Court will enter an appropriate judgment contemporaneously herewith; and

(4) This matter is **STRICKEN** from the active docket.

This 21st day of February, 2014.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge