UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

WILLIE DAVIS,           )
                            )
                            )
       Plaintiff,     )     No. 6:12-CV-33-GFVT-HAI
                            )
v.                   )     REPORT & RECOMMENDATION
                            )
LT. DAVIS, *et al.*,     )
                            )
       Defendants.  )

*** *** *** ***

Plaintiff Willie Davis is a federal inmate confined at the United States Penitentiary-Florence ("USP-Florence") in Florence, Colorado, but he was formerly confined at the United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky.  On February 13, 2012, Davis filed this civil rights action against three staff members at USP-McCreary in their individual capacities.  Davis's amended complaint names Lieutenant Joseph Davis, Senior Officer Specialist John Best, and Correctional Officer Benjamin Cooper as Defendants.  D.E. 27 at 1.  Davis alleges that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his First Amendment right to be free from retaliation.

## I.  Factual and Procedural Background

On August 5, 2011, Plaintiff was confined in the Special Housing Unit ("SHU") at USP-McCreary.  D.E. 27 at 2.  Defendants Davis, Best and Cooper were assigned to the SHU on this day.  D.E. 61-3 at 1, 4, 7.  Around 8:30 a.m., Plaintiff broke the overhead sprinkler in his cell, causing it to spray water and flood the floor, and he began to push water containing a mixture of

urine and feces under his cell door out onto the range floor. *Id.* at 1, 4, 7. Defendants attempted to move Plaintiff to another cell so the floor could be cleaned. *Id.* at 2, 4, 7.

The parties dispute how the events unfolded after Defendants approached Plaintiff's cell. According to the declarations of Defendants, at approximately 9:15 a.m. on August 5, 2011, while removing Plaintiff from his cell, he became verbally abusive and began kicking water containing feces and urine onto Defendants. *Id.* at 2, 4, 7. Defendants allege that Plaintiff threatened Officer Coffman, lunged at him, and spit in his face. *Id.* at 2, 4, 7. At this time, Defendants restrained Plaintiff on the ground "in order to restore security and safety to the range." *Id.* at 2, 4, 7. Plaintiff acknowledges that he "attempted to spit" in Officer Coffman's general direction, but claims he did so in response to Officer Coffman saying "all kinds of vulgar things" in an effort to provoke him. D.E. 27 at 2.

After Plaintiff was taken to the ground, he claims that he did not resist at any time and that Defendants physically assaulted him for several minutes while his chest was on the floor and his hands were cuffed behind his back. *Id.* at 3. Specifically, he alleges that they "covered the right side of [his] face with a pink towel, so that [he] couldn't see who was doing what, and they proceeded to twist [his] leg, and kick [him] in the head, until [he] lost consciousness." *Id.* Plaintiff alleges the violence continued until he regained consciousness, and that Defendant Best used curse words and racial slurs while assaulting him. *Id.*

Defendants claim that, contrary to Plaintiff's assertions, he continued to struggle while on the ground and remained verbally abusive, and that he attempted to bite, and spit on, Defendant Best. D.E. 61-3 at 2, 4-5, 7. Additionally, Defendants claim that Plaintiff stated that he was "going to get" them once the hand restraints were removed. *Id.* at 2, 5, 7. Accordingly, they summoned additional staff members and requested leg restraints, and continued to restrain him

until help arrived without using violence. *Id*. at 2, 4, 7. Defendants deny kicking or striking Plaintiff at any time and either deny that he lost consciousness at any time during this exchange or state they do not recall him losing consciousness. *Id*. at 2, 4-5, 7. Defendants submitted videotape footage in two separate recordings of the events as they occurred on the SHU range, which the Court has reviewed in detail.

After the leg restraints were in place, Plaintiff was placed on his feet and escorted to an observation cell. *Id*. at 2, 5, 8. According to the Declaration of Special Investigative Agent ("SIA") Corriveau submitted by Defendants, Plaintiff was assessed by a medical professional at about 11:20 a.m., which was after the altercation. D.E. 61-4 at 4-5. He reported pain on the right side of his face, the left side of his body, and his right ankle. *Id*. Video footage of the medical examination was submitted by Defendants. *See* D.E. 61-5 Ex. F. After a full assessment, the medical assessor noted no visible signs or symptoms of acute distress and reported there was "[n]o injury identified[.]" D.E. 61-4 at 4-5.

On August 17, 2011, following the incident, Plaintiff filed a request for Administrative Remedy No. 652759-f1 ("BP-9") with the warden at USP-McCreary. D.E. 61-5 at 21. In his grievance, Plaintiff claimed that, on August 5, 2011, while being escorted in the SHU, he did not resist, Defendants "slammed" him to the ground, kicked him in the head until he lost consciousness, and continued to assault him until he regained consciousness. *Id*. Additionally, Plaintiff alleged that it was "obvious" that the alleged "assault" was a conspiracy among SHU employees as retaliation for Plaintiff's previous assault on a staff member. D.E. 32-4 at 10. On August 22, 2011, the USP-McCreary Warden responded to Plaintiff's BP-9 and noted that, although Plaintiff failed to request relief, allegations of staff misconduct were taken seriously and would be reviewed pursuant to conduct regulations placed on BOP employees. *Id*. at 11.

3

The Warden further noted that inmates were not entitled to know the outcome of such reviews and advised Plaintiff of his appeal rights if he was not satisfied with the outcome. *Id.*

Plaintiff appealed his claim on August 29, 2011, to the Mid-Atlantic Regional Director ("BP-10"), but his appeal was rejected because he failed to attach necessary documents as required by the BOP Administrative Remedy Program. D.E. 61-5 at 3. Plaintiff re-filed the Appeal on October 4, 2011, with the appropriate documents attached, and the appeal was accepted for consideration. *Id.* at 3. On December 12, 2011, the Regional Director denied the appeal, noting that, on the date in question, Plaintiff broke the sprinkler head in his cell, and when staff members attempted to remove him from his cell, he kicked water containing feces and urine onto them. *Id.* Additionally, the Regional Director noted that, while being escorted off the SHU range, Plaintiff assaulted a staff member by spitting and lunging at him. *Id.* Plaintiff was placed on the floor where leg restraints were applied to regain control. *Id.* Ultimately, the Regional Director concluded that Plaintiff did not provide, and the investigation did not reveal, any evidence that Defendants failed to follow proper policy and procedure during the incident. *Id.* Plaintiff was advised of his appeal rights to the BOP Office of General Counsel ("OGC"). *Id.*

On December 27, 2011, Plaintiff filed an appeal with the OGC ("BP-11"). D.E. 61-5 at 14-16. The appeal was rejected because Plaintiff failed to attach a copy of his BP-9 and his appeal was not "sensitive." *Id.* at 13. Plaintiff was advised that he could correct the errors and resubmit within 15 days, but he failed to do so. *Id.*

On January 24, 2012, the Bureau of Prison's Office of Internal Affairs referred Plaintiff's complaints of excessive force to SIA Corriveau at USP-McCreary. D.E. 61-4 at 2. Plaintiff was interviewed and executed an affidavit in which he alleged that Defendants subdued him and

4

kicked him in the head until he lost consciousness. *Id*. at 2. He further alleged that Defendants continued to subject him to excessive force until he regained consciousness. *Id*. at 1-2.

During the investigation, SIA Corriveau interviewed Defendants, who denied kicking or assaulting Plaintiff. D.E. 61-4 at 2. Defendants told SIA Corriveau that they used appropriate force in response to Plaintiff's unruly and assaultive behavior. *Id*. SIA Corriveau interviewed other staff members at USP-McCreary who supported the Defendants' accounts of the incident. *Id*.

SIA Corriveau also reviewed the medical assessment completed at 11:20 a.m. on the morning of the incident. *Id*. He noted the medical assessment reported that Plaintiff complained of pain in the right side of his face, the left side of his body, and his right ankle. *Id*. However, the medical professional conducting the assessment noted that there were no visible signs of or symptoms of acute distress and ultimately "[n]o injury [was] identified." *Id*.

During the investigation, SIA Corriveau determined that the testimony provided by Defendants and other staff members at USP-McCreary was supported by both video and medical evidence. *Id*. at 3. He ultimately concluded that the Defendants had acted in a professional manner through the use of appropriate force during the incident. *Id*. Accordingly, SIA Corriveau found that Defendants did not engage in the use of excessive force at any time during the incident on August 5, 2011. *Id*.

Davis filed his initial *pro se* complaint in this Court on February 13, 2013. D.E. 1. On March 4, 2013, Plaintiff tendered an amended complaint. D.E. 18. The Court granted Plaintiff leave and ordered the amended complaint to be filed on June 18, 2013. D.E. 26; D.E. 27. Plaintiff's amended complaint names Lieutenant Joseph Davis, Senior Office specialist John Best, and Correctional Officer Benjamin Cooper as Defendants. D.E. 27. Davis seeks $1.5

million in compensatory and punitive damages "from each defendant in his individual capacity" under the principles laid out in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

Defendants responded to the amended complaint with a motion to dismiss for failure to state a claim, or in the alternative, for summary judgment on August 28, 2013.  D.E. 32.  On February 21, 2014, the Court granted Defendants' motion to dismiss (D.E. 34), and Plaintiff filed a notice of appeal (D.E. 36).  On appeal, the Sixth Circuit reversed, finding dismissal under Rule 12(b) improper because the Court considered evidence outside of the pleadings.  D.E. 44 at 2. The Sixth Circuit also noted that dismissing Plaintiff's motion under the summary judgment standard would have been improper because no notice was afforded to Plaintiff prior to dismissal.  *Id*. at 4.  Additionally, the Sixth Circuit indicated that, although Defendants claimed Plaintiff had not exhausted his administrative remedies, Plaintiff did provide sufficient evidence to counter summary judgment with regards to the exhaustion claim.  *Id*. at 5.  The case was remanded to allow the Plaintiff to conduct discovery and for re-submission of dispositive motions.  *Id*. at 6.

Upon remand, District Judge Van Tatenhove referred this case to the undersigned "to establish discovery and dispositive motions schedule, conduct all further proceedings, and prepare proposed findings of fact and recommendations on any dispositive motions."  D.E. 47 at 2.  This Court entered an order governing discovery and dispositive motions on December 11, 2015.  D.E. 49.  The Order required all dispositive motions to be filed by May 12, 2016.  *Id*.  On May 11, 2016, Defendants filed a motion to revoke Plaintiff's in forma pauperis status.  D.E. 50. The Court ordered Plaintiff to respond, and on Defendants' motion (D.E. 52), ordered that the deadlines set in the scheduling order be held in abeyance pending resolution of the motion to

revoke in forma pauperis status (D.E. 53).   Plaintiff filed a response opposing Defendants'
motion (D.E. 54), and the Court ordered Defendants to reply (D.E. 56).   Defendants filed a reply
on June 3, 2016 (D.E. 57), and Plaintiff attempted to get the last word by filing a second
response to Defendants' final response (D.E. 58).   However, on June 24, 2016, the Court denied
Defendants' motion to revoke Davis' in forma pauperis status and ordered that Docket Entry 58,
Plaintiff's second response, be stricken from the docket.   D.E. 59.

The Court reset the deadline for dispositive motions to July 22, 2016.   D.E. 59.   On July
22, 2016, Defendants filed a second motion for summary judgment.   D.E. 61.   Plaintiff filed a
response on August 4, 2016 (D.E. 62), and Defendants' filed a final reply brief on August 8,
2016 (D.E. 64).   The motion is now ripe for adjudication.

## II. Legal Standards—Summary Judgment

Defendants have filed a second motion for summary judgment under Rule 56 and have
attached and relied upon documents and declarations extrinsic to the pleadings.   Fed. R. Civ. P.
12(d).   A motion under Rule 56 challenges the viability of the other party's claim by asserting
that at least one essential element of that claim is not supported by legally sufficient evidence.
Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).   If the moving party
demonstrates that there is no genuine dispute as to any material fact and that he is entitled to a
judgment as a matter of law, he is entitled to summary judgment.   *Kand Med., Inc. v. Freund
Med. Prods., Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need his own evidence to support this assertion, but need only
point to the absence of evidence to support the claim.   *Turner v. City of Taylor*, 412 F.3d 629,
638 (6th Cir. 2005).   The responding party cannot rely upon allegations in the pleadings, but
must point to evidence of record in affidavits, depositions, and discovery which demonstrates

that a factual question remains for trial.  *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003).  "A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts."  *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

The Court reviews all of the evidence presented by the parties in a light most favorable to the responding party and draws all reasonable factual inferences in his favor.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial.  *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

### III.  Exhaustion of Administrative Remedies

As discussed above, Plaintiff filed an administrative grievance concerning the allegations contained in the complaint.  Although he failed to properly and fully exhaust his administrative remedies regarding these claims, the Sixth Circuit has already found that he succeeded in producing evidence in his amended complaint that his failure to do so was not his fault.  D.E. 44 at 5.  Consequently, summary judgment on Defendants' exhaustion of administrative remedies claim should be denied.

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to make exhaustion of administrative remedies mandatory for incarcerated inmates.  The PLRA provides: "No action shall be brought with respect to prison conditions

under 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e.  Therefore, an incarcerated plaintiff must first exhaust all such administrative remedies "as are available" prior to filing a grievance concerning prison conditions in a District Court.  *Id.* § 1997e(a).  Regardless of the relief offered in the administrative remedy process, prisoners are required to exhaust all administrative remedies.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  The exhaustion requirement applies to all lawsuits by inmates regarding prison life "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

The Supreme Court has recognized that exhaustion of administrative remedies under the PLRA requires proper exhaustion of the administrative remedy process.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules . . ."  *Id.*  The benefits of administrative exhaustion only become evident "if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."  *Id.* at 95.

The BOP employs a four-tiered administrative remedy scheme, available to any inmate who has a complaint about his confinement.  The procedure for filing an administrative remedy is set out in Administrative Remedy Program Statement 1330.17 and 28 C.F.R. §§ 542.10-542.19.  First, an inmate should present an issue of concern informally to staff, and the staff member shall attempt to resolve the issue before a formal request or a Request for Administrative Remedy is submitted.  28 C.F.R. § 541.13(a).  If the issue cannot be resolved informally, an inmate may begin the formal remedy process by filing an appropriate Request for

9

Administrative Remedy Form ("BP-9") to the warden of the institution.  28 C.F.R. § 542.14.  If the inmate does not find the warden's response satisfactory, he has the option to appeal his grievance to the Regional Director in the geographical region in which his place of confinement is located.  *Id*. at § 542.15.   The inmate must use the appropriate Regional Director Administrative Remedy Appeal form ("BP-10").  *Id*.  If the inmate remains unsatisfied with the Regional Director's response, he next has the option of appealing to the office of the General Counsel of the BOP ("OGC") provided that he utilizes the proper Central Office Administrative Remedy form ("BP-11").  *Id*.  Appeal to the OGC is the final step in the administrative appeal process in the BOP's Administrative Remedy Scheme.  *Id*.

If accepted by the appropriate office, a Request or Appeal of a Request is considered filed on the date that it is logged into the Administrative Remedy Index as "received."  *Id*. at § 542.18. Once an initial Request is filed, the warden of the appropriate institution must respond within 20 calendar days.  *Id*.  If an appeal is filed to the Regional Director, the Regional Director must respond within 30 calendar days.  *Id*.  If an inmate appeals to the OGC, the OGC must respond within 40 calendar days.  *Id*.  If an extension of time is needed by the BOP to respond to a Request or an Appeal by the BOP, the response time can be extended by 20 days at the individual institutional level, 30 days at the regional level, and 20 days at the Central Office level.  *Id*.  The BOP must inform an inmate of a necessary response time extension in writing. *Id*.

If an inmate's grievance concerns an issue that is considered sensitive in nature, there is an exception to the initial filing requirement at the institutional level.  Pursuant to 28 C.F.R. § 542.14(d)(1), when an inmate "believes the issue [that is the subject of his grievance] is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at

the institution," an inmate should file his Request directly with the appropriate Regional Director, marking the Request as sensitive and clearly explain, in writing, the reason for not submitting such a Request at the institutional level. 28 C.F.R. § 542.14(d)(1). If the Regional Director agrees that the issue in the Request is sensitive, he shall accept it for filing. *Id*. If the issue is not sensitive, the Request will be rejected, and the inmate should be advised of the rejection in writing. *Id*.

Upon examination of Plaintiff's administrative remedy history, it appears that he did not exhaust all of his available administrative remedies concerning the excessive force allegations that are the subject of his current complaint. D.E. 32-2 Att. B, Att. C. Plaintiff followed the first three tiers in the administrative remedy scheme, but failed to exhaust his remedy at the OGC level.

On August 17, 2011, Plaintiff filed a Request for Administrative Remedy (BP-9) with the Warden at USP-McCreary. D.E. 32-2 at ¶5, Att. B. The Warden provided a response and indicated that the allegations of staff misconduct were being investigated, but Plaintiff was not entitled to know the outcome. *Id*. Plaintiff filed an appeal with the Regional Director (BP-10) on August 29, 2011, but failed to attach proper documentation, resulting in the appeal being rejected. *Id*. at ¶ 6, Att. B. Plaintiff attached the correct documentation and refiled his BP-10 on October 4, 2011. *Id*. at ¶ 7, Att. B. Ultimately, the Regional Director denied Plaintiff's appeal, citing Plaintiff's unruly behavior including assaulting a staff member and being placed in leg restraints. *Id*. On December 27, 2011, Plaintiff filed his appeal with the OGC. *Id*. at ¶ 8, Att. B. The appeal was rejected because Plaintiff did not attach proper documentation and the appeal was determined to not be sensitive. *Id*. Plaintiff was informed that he could correct the errors and resubmit the appeal within 15 days but failed to cure the fatal defects. *Id*.

Plaintiff has produced sufficient evidence in his verified amended complaint to defeat summary judgment on Defendants' administrative remedy exhaustion claim. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) ("[A] verified complaint carries the same weight as would an affidavit for purposes of summary judgment.") (citation omitted). In his amended complaint, Plaintiff admits that he did not exhaust his administrative remedies but claims that his failure to do so was not his fault. D.E. 27 at 5. In his verified amended complaint, he alleges that he "did not have time to make copies of [his] admin. remedies, because [he] went in transit, and when [he] filed to the central office, they kept all of [his] copies." *Id*. Plaintiff made this very same assertion in his appellate briefing at the Sixth Circuit. D.E. 44 at 5.

Defendants rely on the declaration of Joshua Billings, Senior CLC Attorney at the Federal Medical Center in Lexington and the attached SENTRY Report from the BOP's centralized record-keeping database in an attempt to refute Plaintiff's claim. D.E. 61-5 at 5-6. Plaintiff arrived at USP-Lewisburg from USP-McCreary on November 11, 2011. *Id*. Plaintiff's appeal to the OGC was rejected on December 27, 2011. D.E. 32-2 at ¶ 10. On December 28, 2011, Plaintiff received his personal property that contained approximately two inches of legal material and two inches of personal paperwork. *Id*. However, Defendants provide no indication that the paperwork that Plaintiff needed to refile his appeal was contained within this stack of legal and personal materials, and as discussed above, Plaintiff alleges that the central office "kept all of [his] copies." D.E. 27 at 5.

The Sixth Circuit has excused a prisoner's "lack of complete compliance [with the administrative remedy scheme] when the improper actions of prison officials render the administrative remedies functionally unavailable." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014); *see Brock v. Kenton Cnty.*, 93 F. App'x 793, 798 (6th Cir. 2004)

12

("[A] grievance procedure is not 'available' even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it.").  Although a close call, Plaintiff has produced sufficient evidence that his failure to exhaust his administrative remedies was not his fault such that a genuine issue of material fact exists.  Indeed, the Sixth Circuit has already found that Plaintiff has presented sufficient evidence to counter Defendants' exhaustion claim.  D.E. 44 at 5.  Accordingly, summary judgment in favor of Defendants on exhaustion of administrative remedies should be denied.

## IV. Eighth Amendment Claim

The evidence produced by both sides on summary judgment indicates that a genuine issue of material fact exists as to whether the force allegedly applied by Defendants "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillan*, 503 U.S. 1, 6 (1992).  Accordingly, denial of summary judgment to Defendants on Plaintiff's Eighth Amendment claim is proper.

Plaintiff claims he was subjected to excessive force in violation of the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution. "'The unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingramham v. Wright*, 430 U.S. 651, 670 (1977)).  When prison officials are accused of using excessive physical force in violation of the Eighth Amendment, the measuring standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6.  Therefore, the inquiry in cases where prisoners allege the use of excessive force is whether the force was applied "maliciously for the purpose of causing harm."  *Haynes v. Marshall*, 887 F.2d 700, 703 (6th Cir. 1989). "Prison

13

administrators…should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22 (citation omitted)).

Accordingly, in making the determination of whether the use of force was wanton or unnecessary, the court must balance several factors. *Whitley*, 475 U.S. at 321. These factors include:  the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of a forceful response. *Id*. No actual injury needs to be proven to state a viable claim under the Eighth Amendment. *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). Instead, medical evidence and the extent of plaintiff's injuries should be evaluated with all the other evidence in determining whether malicious or sadistic force was used. *Reist v. Orr*, 67 F.3d 300 (6th Cir. 1995). The Eighth Amendment's prohibition against cruel and unusual punishments "necessarily excludes . . . *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 327 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Here, the events after Plaintiff was removed from his cell are in dispute. In their motion for summary judgment, Defendants essentially argue that "the record, taken as a whole, could not lead a rational trier of fact to find for the [Plaintiff, and] there is 'no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007). Defendants assert that the *Whitley* factors can conclusively be applied to the facts to conclude that there was undisputedly "an immediate need for [the] application of force" because Plaintiff became unruly when being moved from his cell. D.E. 61-1 at 18. They contend there is no dispute that Plaintiff kicked contaminated water and

14

became verbally abusive, engaged in verbal threats, lunged at and attempted to spit on Officer Coffman, and attempted to break away from his restraints.  *Id*.  At this time, Defendants took Plaintiff to the ground and restrained him "in order to maintain security and safety" on the range. *Id*.  Defendants allege that Plaintiff continued to struggle while on the ground, and that their use of force force was warranted based on Plaintiff's behavior.  *Id*.

In support of their arguments, Defendants rely on their own declarations, the declarations of SIA Robert Corriveau and Joshua Billings, and video footage from the surveillance cameras of the incident as evidence that no wanton or unnecessary force was used against Plaintiff and no dispute of material fact surrounding the incident exists.  D.E. 61-3; 61-5.  They further argue that the absence of evidence of a significant injury weighs in their favor, and that Plaintiff's "self-serving statements are directly contradicted by sworn testimony, video evidence, and medical records attached herein."  D.E. 61-1 at 20-21.

Conversely, Plaintiff "asserts that each Defendants' conduct violated the Eighth Amendment and was contrary to the law that was clearly established at the time of the incident." D.E. 64 at 6.  Plaintiff claims that, after he was subdued on the ground, he was not resisting and "order had been restored," yet Defendants continued to use malicious and excessive force on him.  *Id*.  He alleges that such force was not applied "in a good faith effort to maintain or restore discipline," and that the video surveillance footage of the events in question shows that "the excessive force that the Defendants' used on the Plaintiff was the sort of force that is repugnant to the conscience of mankind."  *Id*. at 9.  Plaintiff relies upon his verified amended complaint and the videotape footage of the incident.

Plaintiff has successfully pointed to evidence in the record that, interpreted in the light most favorable to him, creates a genuine issue of material fact as to what motivated Defendants'

use of force and whether the force used was excessive while he was restrained on the ground. To prove an Eighth Amendment excessive force claim, the inquiry focuses on "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6. The disputed facts about the force used by Defendants prevents the Court from conclusively applying *Whitley* factors two through five—the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of a forceful response—to determine whether the force was applied "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6.

Although Defendants' have attached significant and consistent evidence in support of their position, Plaintiff's sworn assertions in his verified amended complaint (D.E. 27) contradict Defendants' version of the incident and indicate that a genuine issue of material fact exists as to whether the force used by Defendants' was excessive. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) ("[A] verified complaint carries the same weight as would an affidavit for purposes of summary judgment.") (citation omitted). While Plaintiff admits to attempting to spit in Officer Coffman's general direction, he does not admit that he lunged at or attempted to break away from his restraints. D.E. 27 at 5. Additionally, he asserts that at no point did he resist after being taken to the ground and that Defendants covered his face with a towel, kicked him in the head, and twisted his leg until he lost consciousness. *Id*. Although the medical examination performed on Plaintiff following the incident did not show obvious signs of distress (D.E. 61-4 at 2), this is not necessarily fatal to Plaintiff's claim. *Reist*, 67 F.3d at *2 (upholding summary judgment when the case hinged on plaintiff's word versus a barrage of unrefuted evidence).

16

Despite Defendants' assertions, the record, taken as a whole, does not conclusively establish that no genuine issue of material fact exists.  The parties' differing versions as detailed in their declarations and the verified amended complaint allow a rational trier of fact to find in Plaintiff's favor.  Accordingly, a genuine issue of material fact exists, and this claim should proceed to be determined by the trier of fact.

Additionally, the video footage of the incident, relied on by both parties, does not conclusively establish or meaningfully corroborate either parties' version of the disputed events. In *Scott v. Harris*, the Supreme Court discussed the role that video evidence may play in evaluating a motion for summary judgment.  The Court held that, on summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on [the motion]." *Scott*, 550 U.S. 372, 380 (2007); *see also Griffin v. Hardrick*, 604 F.3d 949 (6th Cir. 2013) (upholding summary judgment in favor of defendants where plaintiff claimed she was not resisting but the video clearly showed her resisting). Instead, the court should view the facts in the light depicted by the videotape. *Scott*, 550 U.S. at 380-81.  Conversely, when plaintiff's testimony is only partially contradicted by a recording, "that does not permit the district court to discredit his entire version of events." *Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir. 2011).  Where a video is not a blatant contradiction, a court must still draw all inferences on summary judgment in favor of the nonmoving party when evaluating whether a genuine dispute of material fact exists. *Oliver v. Greene*, 613 Fed. App'x 455, 459 (6th Cir. 2015).  Where a reasonable jury could find for plaintiff based on the depiction of events on a video, summary judgment for the defendant should be denied. *Coble*, 634 F.3d at 870; *Davis v. Pickell*, 939 F. Supp.2d 771, 780 (E.D. Mich. 2013) (denying summary judgment

where the video left questions of material fact surrounding "the plaintiff's demeanor and the motive of the deputies in using force against him.").

In their motion, Defendants cite *Scott* for the proposition that Plaintiff's version of the events is so discredited by the record that this Court should adopt the facts as depicted in the surveillance videos submitted as Exhibits E and F to Docket Entry 61-5.  D.E. 61-1 at 20. Exhibit E shows the events as they unfolded on the SHU range.  D.E. 61-5 Ex. E.  The camera in this area is positioned significantly down range from the incident, so as to preclude the Court from relying on the video evidence as conclusive.  Additionally, the quality of the video is poor, the images are not of a high resolution, and there is no audio.  Exhibit F depicts the events after Plaintiff was placed on the ground and when he is being placed in leg restraints to be escorted to an observation cell.  D.E. 61-5 Ex. F.  It also depicts the medical examination as it is performed in the holding cell.  *Id*.

Exhibit E is the more pertinent video because it depicts the events giving rise to the altercation and the altercation itself.  D.E. 61-5 Ex. E. Although the video corroborates certain pieces of each parties' factual assertions, it does not conclusively depict the amount of force applied to Plaintiff after he is taken to the ground, who applied that force, why, or whether such force was applied in a good faith effort to maintain order and restore discipline or maliciously and sadistically to cause harm.  *Id*.  The video shows Defendants removing Plaintiff from his cell around 9:15 a.m. with his hands in restraints behind his back.  *Id*.  Standing water is visible on the range floor, and Plaintiff kicks contaminated water towards the Defendants at least once.  *Id*. After this, the parties' interactions become unclear.  *Id*.  The participants are essentially a huddled mass that defies clear conclusions.  The video does not portray Plaintiff's demeanor or Defendants' motivation in deploying force against him.   *Id*.  The absence of sound hinders the

Court in evaluating Defendants' assertions that Plaintiff was being verbally abusive and threatening to "get them," and Plaintiff's assertions that Officer Coffman was saying vulgar things in an attempt to provoke him. *Id*. Additionally, the video does not clearly show the interaction between Officer Coffman and the Plaintiff that lead to him being restrained on the ground. *Id*. The video does not reveal whether Plaintiff actively resisted and does not clearly show whether Defendants engage in the assault described, under oath, by Plaintiff in his verified amended complaint. *Id*.

There is a genuine issue of material fact as to Plaintiff's behavior and Defendants' motive in using force and the extent of such force. *Coble*, 634 F.3d at 870; *Davis*, 939 F. Supp.2d at 780. Accordingly, Defendants' motion for summary judgment on the Eighth Amendment claim must be denied.

### V. First Amendment Retaliation Claim

Plaintiff has failed to point to evidence establishing a genuine dispute as to an issue of material fact on his First Amendment claim. Therefore, Defendants are entitled to judgment as a matter of law.

"[R]etaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment claim, a prisoner must prove that "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X*, 175 F.3d at 394, 398). Protected conduct includes a prisoner's absolute "'First Amendment right to file grievances against prison officials on his own behalf.'" *Hill*, 630 F.3d

at 472 (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).  However, the filing of frivolous grievances is not protected conduct.  *Herron*, 203 F.3d at 415.

To support a First Amendment retaliation claim, "some evidence of retaliatory motive is required, and conclusory allegations of retaliatory motive unsupported by material fact are insufficient to state a claim." *Parks v. Anderson*, No. CIV 6:10-355-GFVT, 2014 WL 4854570, at *32 (E.D. Ky. Sept. 29, 2014) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)).  "Moreover, while temporal proximity between filing grievances and the adverse action may provide some support for establishing retaliatory motive, the Sixth Circuit has been reluctant to find that such evidence alone establishes retaliatory motive." *Id*. (citing *Skinner v. Bolden,* 89 F. App'x 579, 580 (6th Cir. 2004)).

Plaintiff has failed to establish that a reasonable juror could find that Defendants acted with a retaliatory motive, and therefore, he cannot prove the third element of his First Amendment retaliation claim.  In his amended complaint, Plaintiff boldly states that "all of this was done in retaliation, due to me filing several administrative remedies."  D.E. 27 at 3. However, Plaintiff does not explain, and offers no evidence in support of, the proposition that such action was done in retaliation.  Additionally, during discovery, Defendants propounded Interrogatory #10 upon Plaintiff, which states, "With your respect to your claim of retaliation by the Defendants please set out in as much detail as possible the specific protected conduct in which you engaged and the alleged adverse action taken by the Defendants."  D.E. 61-2 at 26.  In response, Plaintiff asserted that

> The Plaintiff redressing and grieving government officials, prior to being assaulted, which exposed how Special Housing Unit Staff were falsifying government documents and neglecting their duty to conduct rounds, gave the defendants' a motive to use excessive force on the Plaintiff when the opportunity presented itself, which is exactly what they did.

20

*Id*. at 6.

Although Plaintiff asserts that he engaged protected conduct and an adverse action was taken, he provides no connection between the two and no evidence that such adverse action was taken in response to his administrative remedies.  Instead, he makes bare, conclusory allegations devoid of supporting facts, and "conclusory allegations of retaliatory motive unsupported by material fact are insufficient to state a claim."  *Parks*, 2014 WL 4854570, at *32.  Further, "while temporal proximity between filing grievances and the adverse action may provide some support for establishing retaliatory motive," such evidence alone is not enough to establish the necessary retaliatory motive for a First Amendment retaliation claim.  *Id.*

Plaintiff has failed to show that a reasonable juror could find that any action taken by Defendants was motivated by retaliation as required by law for a First Amendment retaliation claim.  Accordingly, no genuine dispute of material facts exist, and Defendants are entitled to judgment as a matter of law.

## VI. Qualified Immunity

Because Plaintiff has pointed to evidence in the record that creates a genuine issue of material fact as to the extent of the force used by Defendants, it is also true that summary judgment cannot be granted on the issue of qualified immunity.  "Qualified immunity protects [] officials, including prison employees, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (internal citations and quotation marks omitted).  The standard for application of qualified immunity is whether a reasonable official could have believed his conduct to be permissible under the Constitution. *Saucier v. Katz*, 533

U.S. 194, 202 (2001).  "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Id*.

The Supreme Court has dictated that a two-step analysis applies for qualified immunity under *Saucier*: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established.  *Id*. at 201.  The two-step analysis can occur in any order, and if inquiry on one prong resolves the matter, advancement to the second prong is not necessary. *Pearson v. Callahan*, 555 U.S. 223, 234-36 (2009).  In some cases, the Sixth Circuit has employed a third step: "'whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right.'"  *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 301 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).  In an action in which the defendant asserts qualified immunity, the plaintiff has the burden "to prove that the officer violated a right so clearly established that any reasonable official in [such] position would have understood it was unlawful to engage in the conduct that violated the right."  *Jarriett v. Wilson*, 414 F.3d 634, 642 (6th Cir. 2005).

As discussed above, the constitutional right at issue in this case includes the right to be free from cruel and unusual punishment inflicted in the form of excessive force.  The record does not conclusively establish whether the Defendants' conduct violated Plaintiff's constitutional right to be free from excessive force or whether Defendants' actions were justified in exerting force against Plaintiff.  Because the facts fail to conclusively establish whether malicious or sadistic force was used or whether force was applied in a good faith effort to maintain order and restore discipline, summary judgment on Defendants' qualified immunity claim is improper and must be denied.

## VI.  Conclusion

The undersigned **RECOMMENDS** that Defendants' motion for summary judgment (D.E. 61) be **DENIED** as to Defendants' exhaustion and qualified immunity defenses and Plaintiff's Eighth Amendment claim and **GRANTED** in favor of Defendants as to Plaintiff's retaliation claim.  The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 14th day of February, 2017.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**