UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| WILLIE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-CV-033-GFVT |
| | ) | |
| V. | ) | |
| | ) | **ORDER** |
| LIEUTENANT DAVIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**** **** **** ****

This matter is before the Court upon Petitioner Defendants' Second Motion for Summary Judgment. [R. 61.] Consistent with local practice, this matter was referred to Magistrate Judge Hanly A. Ingram, who filed a Report and Recommendation on February 1, 2017, recommending that Defendants' Motion for Summary Judgment "be DENIED as to Defendants' exhaustion and qualified immunity defenses and Plaintiff's Eight Amendment claim and GRANTED in favor of Defendants as to Plaintiff's retaliation claim." [R. 78 at 23].

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the R&R or else waive his rights to appeal. In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d. 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997) (unpublished opinion)). A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it

duplicates the magistrate's efforts and wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

After this Court granted an extension of time [R. 80], Defendants filed timely objections to the Recommendation. [R. 81.] Defendants make three specific objections. They assert that the Magistrate Judge erred in recommending the denial of Defendants' motion for summary judgment as to Plaintiff's failure to exhaust his administrative remedies and Plaintiff's Eighth Amendment claim; and the Magistrate Judge erred in recommending denial of Defendants' qualified immunity defense. Defendants' objections are sufficiently definite to trigger this Court's obligation to conduct a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the motions, briefing, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. For the following reasons, Defendants' objections will be **OVERRULED**.

I

A

Judge Ingram's Recommended Disposition accurately sets forth a more detailed account of the factual and procedural background of the case and the applicable standard of review for granting summary judgment. Except for what the Court summarizes in its discussion below, the Court incorporates his discussion of the record and the standard of review into this Order.

On August 5, 2011, Davis was housed in the Special Housing Unit ("SHU") at USP McCreary. [*See* R. 27 at 2.] At roughly 8:30 a.m., Davis "broke the head of the fire suppression overhead sprinkler in his cell." [R. 61-1 at 4.] Davis's cell flooded and he began to push the water from his cell into the hall of the SHU. [R. 61-1 at 4.] The water from his cell allegedly contained "urine and fecal matter." [R. 61-1 at 4.] For cleaning purposes, Davis had to be

removed from his cell. [R. 61-1 at 4.] This is where Defendants and Plaintiff have different stories of what occurred next.

As for the Plaintiff, Davis alleges that as he was being removed from his cell by Defendants, Officer Daryl Coffman[1] stood at the gate and said "vulgar things in an effort to provoke" him. [R. 27 at 2.] Davis admits he spit in the direction of Officer Coffman. [R. 27 at 2.] After he spit in the direction of Officer Coffman, Davis alleges the three Defendants

> slammed [him] on the floor, on [his] chest, subduing [him,] and after [he] was subdued, each Defendant proceeded to physically assault [him], and one of the Defendants covered the right side of [his] face with a pink towel, so that [he] couldn't see who was doing what, and they proceeded to twist [his] leg, and kick [him] in the head, until [he] lost consciousness, and they continued to use physical violence to wake me back up. During the assault, [he] heard J. Best say, "F*** n****, son of a b****," and each Defendant continued to maliciously and sadistically assault [him.]"

[R. 27 at 2-3.] Davis reports that while Defendants were assaulting him, he was handcuffed behind his back with his chest on the floor and that he did not resist once on the floor. [R. 27 at 3.] Davis alleges that excessive force was used against him in retaliation for filing for administrative relief. [R. 27 at 3.]

According to Defendants, as Plaintiff was being removed from his cell, he kicked water containing urine and fecal matter onto the Defendants. [R. 61-1 at 4.] Plaintiff made threats against the staff while the staff was giving him orders to calm down. [*Id.*] Plainitff made a threat at Officer Coffman and attempted to break away from the Defendants who were restraining him. [R. 61-1 at 4.] Plaintiff lunged toward Officer Coffman and spit in his face. [R. 61-1 at 4.] After this occurred, Defendants made the decision to take the Plaintiff to the ground in order to "regain control of the situation." [R. 61-1 at 5.] While Defendants were attempting

---

[1] Incorrectly identified as Officer Coofman in Plaintiff's complaint. [*See* R. 61-1 at 4, where Defendants identify the officer at Officer Coffman.]

3

to subdue Plaintiff, they allege that he struggled and was verbally abusive. [R. 61-1 at 5.] Further, Plaintiff attempted to bite Defendant Best. [R. 61-1 at 5.] Defendant Davis requested leg restraints and called for other staff members to help. [R. 61-1 at 5.]

Defendant Davis also requested that the incident be filmed on a handheld camera. Unfortunately, the camera footage from the handheld camera did not begin until Defendant was almost on his feet. [*See* R. 61-5 at 6.] Defendants have also submitted camera footage from a security camera at the end of the hall, though without sound. [*See id*.] The security camera footage is bad quality and it is impossible to tell exactly what is happening. The security camera appears to be placed at the other end of a long hall from where the incident occurred and various prison staff prevent the viewer from seeing the details of the incident. Both videos were submitted *in camera* and under seal to the court. Neither piece of video footage is clear enough to affirm the allegations of the Plaintiff or the Defendant.

Both parties agree that after the incident on the floor, Plaintiff was placed in leg restraints and led to an observation cell. [R. 61-1 at 5.] At 11:20 a.m., Davis was medically assessed and reported paint to the right side of his face, his left side, and right ankle. [R. 61-4 at 5.] The medical assessor found no injuries to the Plaintiff. [R. 61-1 at 5.]

Magistrate Judge Ingram detailed Davis's attempts to obtain administrative relief, a summary of which follows. The basis for much of Judge Ingram's detailed history was taken from an affidavit from Joshua Billings, an attorney at FMC Lexington. [*See* R. 61-5.] Plaintiff filed a request for Administrative Remedy with the warden at USP McCreary on August 17, 2011. [R. 27 at 3; R. 61-5 at 3.] Next, on August 29, 2011, Plaintiff appealed his claim to the Mid-Atlantic Regional Director, but he failed to attach necessary documents and his appeal was rejected. [R. 27 at 4.] He refiled his appeal on October 4, 2011, with the necessary documents,

4

and his appeal was accepted for consideration. [R. 27 at 4.] The Regional Director found that the investigation did not reveal any evidence that "Defendants failed to follow proper policy and procedure during the incident." [R. 27 at 4.] Plaintiff appealed this decision on December 27, 2011, but he failed to attach necessary documents and had marked his appeal as sensitive, which it was not. [R. 27 at 4; R. 61-5 at 4.] Consequently, his appeal was rejected on January 23, 2012. [R. 27 at 4.] Plaintiff was given 15 days to correct his errors, but he failed to do so. [R. 27 at 4.] Though not made explicitly clear, Plaintiff indicated that he attempted to comply with the requirements within 15 days, but he "went in transit," and couldn't access the copies of his records he needed. [R. 27 at 5.] In contrast, Mr. Billings's affidavit states that Plaintiff arrived at USP Lewisburg, where he was being transported on November 11, 2011[2], and his property was received by him on December 28, 2011, one month before Plaintiff was given notice he had 15 days to correct the errors on his appeal. [R. 61-5 at 5.] Further, Defendants allege that Plaintiff did receive his legal documents according to an Inmate Personal Property record dated on December 28, 2011. [R. 61-5 at 57.] This record states Plaintiff received "2 [inch] letters," with no further description, along with other personal effects. [R. 61-5 at 57.] However, in Plaintiff's Appellant Brief, he alleges that he never received the "Administrative Remedy Response," he presumes because his mail had been tampered with. Reply Brief by Plaintiff-Appellant at 4, Davis v. Davis, No. 14-5247 (6th Cir. Nov. 24, 2014). Davis alleges that, when he tried to respond within the 15 required days, he requested a "copy of the administrative remedy response" from the administrative remedy coordinator, but it was not provided to him. *Id.* at 5.

---

[2] This Court reads that Plaintiff was admitted to Lewisburg on November 8, 2011. [*See* 61-5 at 11.]

5

On January 24, 2012, the Bureau of Prisons referred Plaintiff's claim of excessive force to Special Investigative Agent Corriveau at USP McCreary. [*See* R. 61-4 at 2.] SIA Corriveau interviewed the Plaintiff and each Defendant, as well as other staff at USP McCreary, watched the video surveillance footage, and reviewed Plaintiff's medical assessment. [R. 61-4 at 3.] He found that Defendants "did not engage in excessive use of force during the incident." [R. 61-4 at 3.]

On February 13, 2012, Davis filed this civil rights action against the named Defendants in their individual capacities according to *Bivens*. [R. 1.] Davis alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his First Amendment right to be free from retaliation. [R. 27 at 4.] Davis seeks $1.5 million in compensatory and punitive damages. [R. 27.]

On August 28, 2013, Defendants filed a Motion to Dismiss, or, in the alternative, Motion for Summary Judgment. [R. 32.] On February 21, 2014, this Court determined that Plaintiff Davis had failed to exhaust his administrative remedies prior to filing his complaint. [R. 34.] On March 15, 2014, Davis filed a Notice of Appeal. [R. 36.] On March 25, 2015, the Sixth Circuit reversed this Court's dismissal of Davis's amended complaint and remanded the case for further consideration consistent with its opinion. [R. 44.] The Sixth Circuit found that this Court erred in its 12(b)(6) analysis by looking outside the pleadings and, if construed as granting summary judgment, this Court erred in not allowing Plaintiff to submit additional evidence. [R. 44 at 4.] Further, this Court erred in not giving sufficient weight to Plaintiff's complaint, where he provided a reason for not exhausting his administrative remedies. [R. 44 at 4.] This Court respectfully disagrees with Magistrate Judge Ingram's interpretation of the Sixth Circuit's holding, but the outcome is the same. [*See* R. 78 at 6.] The Sixth Circuit did not explicitly

6

make a finding that Davis overcame the standard for summary judgment as to his exhaustion claim, but only found that this Court did not adequately consider the Plaintiff's statements in his complaint. [R. 44 at 6.]

The case was referred to Magistrate Judge Hanly Ingram on reversal to establish discovery and dispositive motions schedule, conduct all further proceedings, and prepare proposed findings of fact and recommendations on any dispositive motions. [R. 47.] According to Judge Ingram's scheduling orders, Defendants filed a second motion for summary judgment on July 22, 2016, [R. 61] and Plaintiff filed a response on August 4, 2016. [R. 62.] Defendants objected on March 7, 2017. [R. 81.] As of this filing, Plaintiff has not objected.

**B**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 Fed.Appx. 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. American Honda Motor Co., Inc.*,

7

71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255). Further, because complaints are signed under penalty of perjury, a "verified complaint [] carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

## II

### A

Defendants first object to the Magistrate Judge's recommendation to deny summary judgment as to Davis's failure to exhaust his administrative remedies before filing suit in this Court. Though this Court does not exactly agree with the Magistrate Judge's entire argument, specifically his interpretation of the Sixth Circuit opinion, this Court is in agreement with the Magistrate Judge's conclusion, that Davis has satisfied the requirement to exhaust his administrative remedies. Summary judgment is denied as to the Defendants' claims that Plaintiff did not exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."), and it applies to any claim that arises out of any aspect of prison life, whether it involves general circumstances or particular episodes and whether it alleges excessive force or some other wrong. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court explained that exhaustion of administrative remedies

must be done "properly," which means going through each step that the agency mandates, obeying all directions, and adhering to all deadlines set by the administrative rules. *Id*. at 90. To further the purpose of the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner believes the procedure "to be ineffectual or futile." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotation marks and citations omitted). Because they are not relevant to this analysis, the detailed steps required for exhaustion are outlined in the Magistrate's R&R and are incorporated here. [R. 78 at 9.]

An exception to the PLRA exhaustion requirement from the PLRA is derived out of First Amendment retaliation law. Courts have carved out an exception to exhaustion when a prisoner is threatened or coerced in such a way that they did not feel they could exercise their First Amendment rights. *See Thaddeus–X v. Blatter,* 175 F.3d 378, 396 (6th Cir.1999). Using the summary judgment standard for analyzing the facts, the court must ask whether the actions against the Plaintiff were such that they would "deter a person of ordinary firmness" from continuing with the required appeal process. *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 396 (6th Cir.1999). The court *in Brock v. Kenton Cty., KY,* 93 F. App'x 793, 798 (6th Cir. 2004), found that if "prison officials somehow prevent a prisoner" from using a grievance process, it is not "available" to him, even if one exists. To use this defense, the prisoner must make some sort of "effort" to comply with available grievance procedure that was thwarted by prison officials. *Brock v. Kenton Cty., KY*, 93 F. App'x 793, 798 (6th Cir. 2004).

Magistrate Judge Ingram found that Davis did not exhaust his administrative remedies and this Court agrees. At the last level of administrative appeal, Davis did not file his appeal

correctly and it was rejected. [R. 27 at 4.] Davis was given 15 days to correct his appeal, but he did not send a corrected version. [R. 27 at 4.]

Even though Plaintiff did not exhaust his administrative remedies, Judge Ingram found that Plaintiff attempted to do so and meets the exception from *Himmelreich*. In Plaintiff's complaint, he stated he "went in transit" and couldn't access his legal documents. [R. 27 at 5.] As the Sixth Circuit noted, for summary judgment purposes, a verified complaint carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). Further, Davis submitted in his Sixth Circuit Appellant Brief that he never even received the response informing that he had fifteen days to comply with the requirements for the appeal. Reply Brief by Plaintiff-Appellant at 4, Davis v. Davis, No. 14-5247 (6th Cir. Nov. 24, 2014). Construing all facts in the Plaintiff's favor, Plaintiff attempted to comply with administrative remedy requirements, but was blocked from doing so by various prison officials. Though there is evidence that Davis was not "in transit" as he said he was in his complaint [*see* R. 61-5 at 5.], the other facts he alleges, that his mail was tampered with, and that he never received the Administrative Remedy Response, were not countered by the Defendants. Defendants assert that providing the Inmate Personal Property Record contradicts Plaintiff's assertion that he did not receive the copies of his legal materials after transport. But, the cursory "2 [inch] letters" comment on the Personal Property record is not a definitive enough description to overcome Plaintiff's sworn testimony on his verified complaint. [R. 61-5 at 57.]

Since Plaintiff testified on his verified complaint he did not receive his legal documents and Defendants did not prove conclusive proof to the contrary, summary judgment is not appropriate. This Court is not a finder of fact as to summary judgment and may not weigh the Personal Property record over the Plaintiff's verified complaint. Accordingly, summary

judgment is denied as to Defendants' claim that Plaintiff did not exhaust his administrative remedies.

B

The Defendants next object to Magistrate Judge Ingram's finding that Plaintiff pled sufficient facts to state a claim upon which relief may be granted under the Eighth Amendment. Magistrate Judge Ingram found that a genuine issue of material fact existed as to whether the force applied to Defendant in the incident at question "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6 (1992). This Court agrees with the Magistrate Judge's finding and affirms that summary judgment is denied to Defendants on Plaintiff's Eighth Amendment claim.

The Eighth Amendment to the Constitution, in pertinent part, protects against "cruel and unusual punishments." U.S. Const. amend. VIII; *see Whitley v. Albers*, 475 U.S. 312, 318 (1986). In the prison context, "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal parentheticals omitted). When analyzing Eighth Amendment violations due to excessive force used by a prison guard, the Court asks whether the "force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotations omitted); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993), *Reist v. Orr*, 67 F.3d 300 (6th Cir. 1995). The extent of injuries suffered by the prisoner is not relevant, only that the force applied to the prisoner was "maliciously and sadistically invoked to cause harm." *Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993). Notably, "[n]o actual injury needs to be proven to

11

state a viable Eighth Amendment claim." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (quoting *Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir.1991).)

Excessive force claims brought under the Eighth Amendment are assessed with an "objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011). Prison guards and workers have to weigh various concerns, such as harm to staff and the inmate when there is a disturbance with an inmate and make decisions in "haste, under pressure, and frequently without the luxury of a second chance." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Not every "push and shove" violates the Eighth Amendment, but only an amount of physical force that is "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Various factors can be used when assessing the amount of force in a specific incident, such as "the need for the application of force, the relationship between the need and the amount of force that was used, [] the extent of injury inflicted . . . the extent of the threat of safety of staff and inmates" and "any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312, 320 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (CA2), cert. denied *sub nom. John v. Johnson,* 414 U.S. 1033 (1973.)). In order to go to the jury, there must be evidence that supports "a reliable inference of wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The first step in this analysis is viewing the facts in a light most favorable to the Plaintiff and resolving any disagreements as to the facts in the Plaintiff's favor. *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011). When there is a genuine dispute as to a fact, "[c]onstruing the facts on summary judgment in the light most favorable to the non-moving party

12

usually means adopting the plaintiff's version of the facts." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011). However, if the record "blatantly contradict[s]" one party's story, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011). In *Scott v. Harris*, 550 U.S. 372, 379 (2007), as here, the Court was able to watch a videotape of the incident in question and used the standard cited above to deny summary judgment. When the videotape blatantly contradicts one party's story, the court may rely on the videotape in granting summary judgment. *See Scott v. Harris*, 550 U.S. 372, 379 (2007).

Contrary to Defendants' assertions, no such clear record exists here as in *Scott* to grant summary judgment in their favor. This Court was able to watch the video recording of the incident in question, as the Magistrate Judge did as well. The video submitted by Defendants is taken from a security camera that was at the end of a hall and was of very bad quality. [*See* 61-5 at 6.[3]] Neither the Plaintiff's nor the Defendants' retelling of the events from August 5, 2011, are entirely corroborated or contradicted by the video footage. The handheld camera footage did not begin until after the incident in question and is similarly not helpful in granting summary judgment in favor of the Defendants. [*See* 61-5 at 6.] Construing the facts in favor of the Plaintiff here requires that this Court adopt the Plaintiff's account of the incident in question. Assuming that Plaintiff was assaulted, had his leg twisted, and was kicked in the head until he lost consciousness [R. 27 at 3], Defendants went beyond a "good-faith effort to maintain or restore discipline" and instead applied force to Plaintiff "maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6 (1992). The fact that Plaintiff suffered no visible injuries as detailed in the prison doctor's report is also not relevant. *See Moore v. Holbrook*, 2

---

[3] Video footage was sealed and reviewed *in camera*.

F.3d 697, 701 (6th Cir. 1993). Even acknowledging that prison guards are given discretion to use force to protect themselves and restore order, the force alleged by Plaintiff in his verified complaint went beyond what was needed to subdue him. A reasonable officer on the scene would not need to kick the Plaintiff in the head or twist his leg. A reasonable jury could see the surveillance video that this Court has seen and return a verdict for either party, which means summary judgment is not appropriate.

This Court agrees with the Magistrate Judge's finding that there is a genuine issue of material fact in the record as to Plaintiff's Eight Amendment excessive force claim. Accordingly, summary judgment is denied to Defendants on Plaintiff's Eighth Amendment claim.

## C

Third, Defendants object to the Magistrate Judge's recommendation to deny Defendants' request for Qualified Immunity. [*See* R. 61-1 at 26.] Since this Court has found that Defendants have potentially violated a Constitutional right, summary judgment is appropriately denied as to their qualified immunity defense. [*See* R. 78 at 21.]

When invoked, "the doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). In evaluating claims of qualified immunity, courts generally looks at two factors. First, the court asks if the Defendants' "conduct violated a constitutional right" when the facts are "[t]aken in a light most favorable" to the Plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court asks whether the violated right at issue was "clearly established." Id. For a right to be clearly established, it is important

14

that "state of the law at the time of the action . . . gave respondents fair warning that their alleged treatment of the plaintiff was unconstitutional." *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (internal brackets omitted).  Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand," but "both [steps] must be answered in the affirmative for the plaintiff's claim to proceed." *Pearson*, 555 U.S. at 236; *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).  Finally, once a defendant has raised the defense, "the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation 'that every reasonable official would have understood that what he [was] doing violate[d] that right .'" *Thomas v. Plummer*, 489 F. App'x 116, 119 (6th Cir.2012).

       This Court has found that a reasonable jury could find that Plaintiff's Eighth Amendment rights were violated, which satisfies one prong of the qualified immunity test.  Defendants could still be protected by qualified immunity if the Eighth Amendment right they violated was not clearly established on August 5, 2011, when the incident at question occurred.  As discussed in the previous section, prisoners are afforded protection from excessive force under the Eighth Amendment to the Constitution.  Two seminal Supreme Court cases on this issue were well-established law at the time Defendants allegedly used excessive force against Davis and both have been cited extensively by the Sixth Circuit.  *See Whitley v. Albers*, 475 U.S. 312 (1986); *Hudson v. McMillian*, 503 U.S. 1, (1992).  These cases make explicit that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth

Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal parentheticals omitted). Assuming Defendants assaulted Plaintiff by pushing him on the ground and covering his face while they kicked him until he lost consciousness, the standard for an Eighth Amendment violation is met and Plaintiff's rights were clearly established. [*See* R. 27 at 2-3.]

Construing all facts in Plaintiff's favor, Defendants may not use a qualified immunity defense at this stage because defendants violated Plaintiff's Eighth Amendment rights to be free from excessive force by assaulting him on August 5, 2011, and Plaintiff's Eighth amendment rights were clearly established at that time. Summary judgment is denied on Defendants' qualified immunity defense.

### III

In conclusion, after reviewing *de novo* the entire record, as well as the relevant case law and statutory authority, the Court is in agreement with Judge Ingram's analysis of the claims that are the subject of Defendants' objections. Neither party objected to Judge Ingram's analysis and ruling on Plaintiff's First Amendment Retaliation claims and this Court is in agreement with his conclusions.

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED:**

1. The Defendants' Objections [R. 81] to the Magistrate's Report and Recommendation **[R. 78]** are **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [**R. 61**] is **ADOPTED** as explained by this order; and

3. This case is **REFERRED** to Magistrate Judge Hanly A. Ingram for a telephonic conference to determine the status of the case and how to proceed. *See In re: Civil and Criminal Magistrate Judge Case Assignments*, Gen. Order 15-1.

This the 23rd day of March, 2017.

Gregory F. Van Tatenhove
United States District Judge